[Civ. No. 5474. Third Appellate District.—December 11, 1936.]

UNITED BANK AND TRUST COMPANY OF CALI-
FORNIA (a Corporation), Appellant, v. GLADYS G.
HUNT, as Executrix, etc., et al., Respondents.

Keyes & Erskine, Butler, Van Dyke & Harris, Rich, Weis & Carlin and Louis Ferrari for Appellant.

J. Oscar Goldstein, Delancey C. Smith, Ray Manwell, Francis C. Brown and Murray Draper for Respondents.

THE COURT.—This is a third appeal growing out of the transactions between A. P. Hunt and Gladys G. Hunt, his wife, who will be herein referred to as the Hunts, and United Bank & Trust Company of California, a corporation, the predecessor of Bank of America National Trust & Savings Association, to be referred to hereafter as the bank.

It is not necessary to again recite the facts applicable to the issues here presented, as a statement of the dealings between the parties to this appeal will be found in the case tried in Butte County (*Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108 [291 Pac. 184]), wherein a judgment entered in favor of the Hunts upon their complaint was affirmed and the judgment entered in favor of the bank, pursuant to the action of the trial court in granting defend-

ant's motion for a judgment notwithstanding the jury's verdict, upon its counterclaim was reversed, and judgment ordered in plaintiffs' favor upon their counterclaim without further proceedings in the trial court; and in an appeal taken from the Superior Court of the County of Yuba, wherein, upon the issues raised by the cross-complaint the court granted a nonsuit against the Hunts, and which in *United Bank & Trust Co.* v. *Hunt*, 1 Cal. (2d) 340 [34 Pac. (2d) 1001], was returned for further proceedings upon the issues presented by the counterclaim and cross-complaint, whereupon judgment was rendered in favor of the Hunts, and from that judgment this appeal is now taken.

Among the many points presented by the bank for consideration is the contention that the judgment in the Butte County case was *res judicata* with respect to the claim of wrongful foreclosure of the trust deed. The bank claims that as the pleadings in the Butte case raised the issue of wrongful foreclosure there is a conclusive presumption that it was there litigated. (*Price* v. *Sixth District Agricultural Assn.*, 201 Cal. 502 [258 Pac. 387]; *Elm* v. *Sacramento Suburban Fruit Lands Co.*, 217 Cal. 223 [17 Pac. (2d) 1003].) However, an examination of the record and the opinion of the first appeal (210 Cal. 108) clearly indicates all concerned considered the action solely as one "to recover damages in the sum of $20,000.00 from defendant (bank) by reason of the loss of the crop", and elsewhere in the same opinion it was said:

"The trial proceeded on the theory that defendant (bank) was obligated to furnish the amounts as conditioned for by plaintiffs, defendant's defense being merely that certain advancements had been made which exhausted the credit."

In the first appeal taken in this Yuba County case it became necessary to construe the pleadings in the Butte County case and it was there contended that the prior judgment from that county was a bar, but the Supreme Court said in answer to that claim (1 Cal. (2d) 340) that the issue decided in the Butte County case was the single issue of damages through loss of a rice crop by reason of a breach of contract, and the bank waived its right to raise the question of *res judicata* by its opposition to defendants' motion in the Butte case to include therein the various causes of action set forth in the cross-complaint, and the denial of

that motion was tantamount to an express determination by the court with the consent of opposing counsel to reserve those issues for future adjudication. The bank further claims that the record on this appeal is different from the former appeal from Butte County and therefore the doctrine of the law of the case does not apply, but the only difference is the introduction of the judgment roll in the Butte action which was introduced only to show that the question of value was attempted to be injected into the former trial, but such reference does not vary the record upon the principal issue here before us, that is, as to the conduct of the bank in attempting to limit the issues to one item of damages only, and even as to value it was admitted only over the objection of the bank, and the court said in *United Bank & Trust Co.* v. *Hunt, supra:*

" . . . Counsel who were successful in preventing the consolidation of the issues cannot be heard later to object to a trial of the related matters upon the ground of *res judicata*. The course pursued by the court and counsel in the Butte County case was tantamount to an express determination on the part of the court with the consent of opposing counsel to reserve the issues involved for future adjudication. (*Asher* v. *G. F. Stearns etc. Co.*, 241 Ky. 292 [43 S. W. (2d) 1012].) Litigants cannot successfully assume such inconsistent positions.''

It is the claim of the bank that, having recovered damages for the breach of the contract, the Hunts cannot now in a second action recover further damages for the breach of the same contract. However, as before pointed out, by the actions of this appellant the issues in the Butte County case were definitely limited to one item of damages, that was for failure to supply to the Hunts sufficient money with which to raise a crop, and that was the only matter directly adjudged. The bank, having in the former action treated the contract between itself and the Hunts as divisible, is now estopped to assert the contrary view to the detriment of the Hunts.

It is also claimed that the bank did not violate its promise to postpone the foreclosure of the deed of trust. The Supreme Court in its opinion on the appeal in the Yuba County case said:

"In April of that year (1924) the parties met and adjusted their financial relations, which resulted in the execution of the following instruments:

. . . . . . . . . . . . . .

"4. A written agreement whereby the Bank was to make the future advance referred to; to suspend foreclosure under the trust deed for a reasonable time; . . . "

It will thus be seen that the agreement to refrain from foreclosure was an agreement to suspend foreclosure for a reasonable time, and what that reasonable time was became a question of fact for the jury. It is also a matter of evidence that the rice crop of 1924 yielded a very substantial sum, with which money the Hunts could have carried out their part of the contract so that foreclosure would have been prevented, and therefore it is apparent that, as a result of the loss of the rice crop through fault of the bank, the damage to the Hunts occurred. In this connection the Supreme Court in the case of *Hunt* v. *United Bank & Trust Co., supra,* said:

"Because of the Bank's unjustified act in refusing to advance the money which the Bank had obligated itself to do, the Hunts were in no position to acquire the necessary funds for they were at the end of their financial resources."

And later, in the same opinion, the court said:

"The loss of the prospective profits was the natural and direct consequence of the breach, the Hunts being in no financial position to borrow elsewhere, they having been stripped of all control of their property by the Bank to secure it for the very advances it had obligated itself to furnish."

The bank, therefore, having terminated the contract, the Hunts were released from further obligation upon their part. In support of this rule the court relied upon the cases of *McConnell* v. *Corona City Water Co.*, 149 Cal. 60 [85 Pac. 929, 8 L. R. A. (N. S.) 1171]; *Walker* v. *Price,* 163 Cal. 617 [126 Pac. 482]; *Alderson* v. *Houston,* 154 Cal. 1 [96 Pac. 884].

An action in ejectment had also been filed by the bank against the Hunts to recover the possession of the home place. To this the Hunts filed an answer, and thereupon, upon default of defendants, a judgment was entered holding the bank was the owner and entitled to the posses-

sion of the property described in the complaint. It is the claim of the bank that the judgment estopped the Hunts from asserting that the foreclosure of the deed of trust was wrongful. However, as said in 9 California Jurisprudence, page 1020, ''There is no estoppel as to an equitable defense not set up.''

The precise question here presented was before the Supreme Court in *Ayres* v. *Bensley*, 32 Cal. 620, where the court held that a defendant in an action in ejectment is not bound to set up or litigate new matter constituting a cause of action in his favor.

■ Criticism is made of certain instructions, but if what we have already said is correct, no fault can be found with the instructions. An instruction was given in which, after summarizing the first cause of action of the Hunts covering the loss of the rice crop, the court told the jury that the Hunts had been compensated for this loss in their action in Butte County and therefore they could not recover any further damages on this claim, but the instruction sets up the three other breaches alleged, namely, failure of the bank to lease the Adobe Ranch to Bayless; foreclosure of the trust deed, and the conversion by the bank of the personal property covered by the chattel mortgage. We find no fault with the instructions complained of and they are consistent with the theory upon which the case was tried, and in accordance with the principles herein set forth.

We might discuss at length the various other points urged by the bank, such as the claim that the testimony shows without dispute the bank did not violate its promise to postpone the foreclosure of the deed of trust; that as a matter of law the bank did continue the sale for a reasonable time and therefore did not breach the contract; that in other particulars the bank performed its full duty toward the Hunts, and several other alleged errors, and we have noted the specifications, but to comment upon them would extend this opinion unduly. All we can say is we have carefully studied and examined the points and the authorities cited in support thereof, but do not find they carry sufficient weight for this court to change the conclusions reached by the trial court.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 8, 1937, and the following opinion then rendered thereon:

THE COURT.—Appellant feels that this court has mis-interpreted the record in a material matter, thereby preju-dicing it should it be necessary to present the issues before the Supreme Court. Lest such should be the effect we deem it but fair to amplify our statement in the particulars com-plained of. The principal complaint has to do with the in-structions of the court in regard to the right of the Hunts to recover damages for the alleged breach of contract by the bank in failing to make certain advances. In this connec-tion the court instructed the jury:

"It is an admitted fact in this case that the cross-com-plainants (Hunts) and cross-defendant (Bank) entered into a written contract on April 14, 1924; and this action has been brought by cross-complainants to determine whether or not they are entitled to damages upon the ground that the cross-defendant breachèd such contract.

"It has been conclusively established as a matter of law that the cross-defendant breached the contract by failing to supply to cross-complainants sufficient money with which to raise a crop on Parcel 2, or the Home Place, described in the contract during the year 1924. Cross-complainants have received complete satisfaction for the damage they suffered by reason of their inability to raise a crop on the Home Place in 1924.

"In this action cross-complainants allege that they have sustained further damages than those which they have here-tofore received by reason of the same breach of the contract above mentioned, and also by reason of other breaches of the same contract.

"The other breaches for which cross-complainants seek damages in this action are respectively:

"First, the failure of the cross-defendant Bank to Lease Parcel 1, known as the Adobe Ranch to one Bayless; and

"Second, the foreclosure by cross-defendant Bank of the interest of cross-complainants in the three parcels of real property described in the contract of April 14, 1924, being parcel number 1, known as the Adobe Ranch, parcel number

2 known as the Home Place, and parcel number 3 known as the Upper Place; and

"Third, conversion or improper taking by the cross-defendant Bank of the personal property which has been included in a chattel mortgage given by cross-complainants to cross-defendant Bank under the contract of April 14, 1924.

"The cross-defendant Bank denies each and all of these claims of cross-complainants, and further denies that it is indebted to cross-complainants for damages or in any other manner."

"I instruct you that if you find as a fact that cross-complainants suffered any damages from the breach already established of the contract of April 14, 1924, by cross-defendant bank (the failure to advance the $1,000.00 and the $2,500.00), or from any of the other breaches claimed by cross-complainants to have been committed by cross-defendant bank, that then and if you so find, cross-complainants are entitled to recover any such damages they may have sustained, except that they are not entitled to recover in this action any damages caused to them by loss of the crop on Parcel number 2, or the Home Place, during the year 1924."

Appellant claims these instructions were erroneous because the Hunts having recovered for the loss of the crop on the Home Place in the Butte County action cannot now recover in this action for additional damages for the breach of the same contract for losses other than loss of crop. As a general proposition of law, appellant is correct in stating that when a breach of contract occurs a litigant may not recover part of his damages for such breach in one action and part in another action, but must obtain all of the relief he intends to seek in one proceeding. But it must be recalled that in this litigation the Supreme Court has already found that the Hunts in the Butte County action attempted to enlarge the issues to include all claims for damages they had against the bank, but this was successfully resisted by the bank. The Supreme Court, in considering the Butte County case, also held the issues there presented were limited to the single issue of damages sustained by the Hunts for the loss of the rice crop, and that the course there pur-

sued was tantamount to an express determination on the part of the court with the consent of opposing counsel to a reservation of other issues for future litigation.

It was determined in the Butte County case that the bank had breached its contract, and in this case, with that judgment roll in evidence, the court had the right to so instruct the jury. The Hunts were entitled to all damages they could establish which were not considered in the Butte County case, regardless of what breach they might flow from, and the court so properly instructed the jury.

The bank also complains that this court failed to consider the point urged by it ·that the counterclaim of the Hunts failed to state a cause of action against the bank respecting what is known as the Bayless lease. The bank claims that the contract between itself and the Hunts did not impose any contractual obligation upon it to negotiate a lease with Bayless, but if such obligation were imposed it performed that obligation.

The contract provides briefly that the Hunts would consent to a lease of the Adobe Ranch to Bayless and would execute a lease in whatever form might be prepared and preferred by the bank, but with a proviso that the crop share of the Hunts would be 35 per cent. The testimony discloses that the bank sent Mr. Jarvis to the Hunts representing the bank. A form of lease to Bayless was presented to the Hunts and signed. It was then taken to Bayless, who testified he asked for an agreement from the bank not to foreclose during the cropping season, as otherwise he would have no protection, but the bank refused and no lease was executed. Within a day or two he wrote the bank asking if his interests would be protected in case of legal entanglements between the Hunts and the bank. No reply was made to this letter and three days later one Roberts entered into possession under a purported lease from the Hunts. The bank in their agreement with Roberts agreed to protect him against foreclosure. Roberts continued to operate the ranch with Hindus on the place and Jarvis attempted to get the Hunts to sign a lease to Roberts, but they refused on the ground that Roberts was representing Hindu operators. A lease was offered in evidence from the Hunts to Roberts, purported to have been acknowledged in Sacramento, also containing an alteration of the 35 per cent crop interest to

33⅓ per cent. The Hunts claimed they never executed this lease nor acknowledged the same and Jarvis admitted that he made the alterations and substitutions without the authorization of the Hunts. Upon this and similar testimony the Hunts claimed that the bank not only did not carry out either its express or implied obligation to make a lease to Bayless, but actually discouraged him from entering into a lease. The jury upon sufficient evidence so found.

 Another point urged is that this court failed to discuss in sufficient detail an item of damages for the improper taking by the bank of the personal property pledged by the Hunts under a chattel mortgage to the bank in April, 1924. While an action in claim and delivery was pending the property was taken by the bank and sold. The property having been sold by the bank while technically in the custody of the law rendered the bank liable for conversion.

We do note two errors in the opinion as filed. In the fourth paragraph of the opinion we say: "The Bank further claims that the record on this appeal is different from the former appeal from Butte County . . . ", whereas we should have said, "Yuba County". Also, for the sake of clarity in the same paragraph the phrase "in attempting to limit the issues to damages only", should be changed to read, "in attempting to limit the issues to one item of damage only".

With these additions and amendments to the opinion as filed, the petition for a rehearing is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 8, 1937.